UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 04-128-15 (RMC) |
| WILLIAM H. SIMMONS, | ) ) ) | |
| Defendant. | ) ) | |

OPINION

William H. "Mike" Simmons has filed a *pro se* § 2255 motion to vacate, set aside, or correct his criminal convictions and sentence. The United States opposes the motion. The Court has reviewed the motion carefully and concludes it should be denied. Mr. Simmons's claims are either barred or without merit. The motion will be denied.

I. FACTS

William H. "Mike" Simmons was a defendant in a large, multi-defendant prosecution that spanned years. A joint investigation of the M Street Crew by the Safe Streets Task Force, a joint effort in Washington, D.C., by the Metropolitan Police Department and the Federal Bureau of Investigation, began in 2002 and ended on March 16, 2004, when 39 persons were arrested in the District of Columbia, Maryland, Virginia, New York, and California. In a 159-count superseding indictment filed on October 19, 2005, a grand jury charged Mr. Simmons and co-defendants with narcotics conspiracy, in violation of 21 U.S.C. § 846; racketeering conspiracy, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68; narcotics trafficking; murder and other violent crimes; and various weapons crimes.

1

The defendants were divided into three groups for trial.  The first group, consisting of Mr. Simmons, Jonathan Franklin, George Wilson, William Robinson and Joseph Blackson, was tried by jury before this Court between March 6 and May 22, 2006.[1]  On May 25, 2006, the jury convicted Mr. Simmons of narcotics conspiracy (Count 1), RICO conspiracy (Count 2), and distribution of phencyclidine (PCP) within 1000 feet of a school (Counts 8, 10, and 30).  The jury acquitted Messrs. Simmons and Franklin of murder, assault, and weapons charges related to the March 28, 2003 shooting of Kevin Lurk and Shelby Anderson and found that the RICO conspiracy did not involve murder.

The evidence at trial showed that Mr. Franklin was the head of the M Street Crew, a "large-scale drug ring" that operated "an open air drug market" throughout a four-block area centered on the intersection of 18th and M Streets in Northeast Washington, D.C.  *See United States v. Wilson*, 605 F.3d 985, 997 (D.C. Cir. 2010) (transcript citations and quotation marks omitted).  Mr. Franklin operated with a "consistent routine:" he obtained bulk quantities of PCP and ecstasy pills from suppliers and repackaged the drugs for members of the Crew to sell.  *Id.* at 998.  Although Mr. Franklin ordinarily functioned as the Crew's leader, he was assisted in that role by his three "lieutenants," Messrs. Robinson, Wilson, and Blackson, who supplied narcotics to the Crew and resolved disputes involving money or drugs when he was absent.  *Id.*  Mr.

---

[1]  Mr. Simmons was represented by A. Eduardo Balarezo and William Purpura.  Counsel filed several pre-trial motions, which were denied except for those seeking to join co-defendants' motions.  *See, e.g.*, Motion for Severance of Offenses [Dkt. 288]; Motion for a Preliminary Determination of Conspiracy [Dkt. 370]; Motion to Disclose Identities of Each Confidential Information [Dkt. 372]; Motion for Discovery of Co-Defendant and Co-Conspirator Statements [Dkt. 373]; Motion for Leave to Join Defendant Davis's Motion to Suppress Tangible Evidence [Dkt. 376]; Motion to Join Co-Defendant Franklin and Blackson's Motion to Suppress Wiretap Evidence [Dkt. 383].  They also made oral motions at trial for severance from Jonathan Franklin or mistrial on March 15, 2006, and an oral motion for mistrial on March 23, 2006.  These, too, were denied.

Wilson, for example, "played an enforcement role, . . . defend[ing] [the Crew's] preeminence in the 18th and M area from outsiders, sometimes by force." *Id.* at 999.

"Beneath Franklin's three lieutenants was a class of 'foot soldiers' who made individual sales in the 18th and M area." *Id.* Mr. Simmons was "Franklin's 'loyalest foot soldier,'" described by witnesses at trial as "Franklin's '[s]idekick,' 'runner,' 'helper,' 'little man,' and 'flunky.'" *Id.* (quoting April 19, 2006 PM Trial Tr. at 44, April 27, 2006 AM Trial Tr. at 88). Another witness testified that "[Mr.] Simmons would do '[w]hatever [Franklin] told him. Sell bottles to people. If [Franklin] . . . needed anything done, he'd do it.'" *Id.* (quoting May 2, 2006 AM Trial Tr. at 43). One of Mr. Simmons's "most frequent tasks" was ferrying narcotics to Mr. Franklin or from Mr. Franklin to buyers. *Id.*

On August 24, 2006, this Court sentenced Mr. Simmons to an aggregate term of 264 months (22 years), followed by a 60-month term (5 years) of supervised release. Mr. Simmons filed a timely appeal. After full arguments attacking the trial, verdict, and sentence, the Court of Appeals affirmed Mr. Simmons's convictions and sentence on May 25, 2010. *See United States v. Wilson*, 605 F.3d 985 (D.C. Cir. 2010).

Mr. Simmons filed the instant motion on May 6, 2011. It is now fully briefed.

## II. LEGAL STANDARD

A federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Because "Section 2255 is not a substitute for a direct appeal," "in order to gain relief under any claim, [the movant] is obliged to show a good deal more than would be sufficient on a direct

appeal from his sentence." *United States v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A hearing need not be held on a § 2255 motion when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* § 2255(b); *accord United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996). When the judge ruling on the § 2255 motion is the same judge who presided over the trial, as is the case here, the decision as to whether an evidentiary hearing is necessary is within the discretion of the Court. *See Morrison*, 98 F.3d at 625. "When a § 2255 motion involves ineffective assistance of counsel, a hearing is not required if the district court determines that the 'alleged deficiencies of counsel did not prejudice the defendant.'" *United States v. Weaver*, 234 F.3d 42, 46 (D.C. Cir. 2000) (quoting *United States v. Sayan*, 968 F.2d 55, 66 (D.C. Cir. 1992)).

### III. ANALYSIS

Mr. Simmons advances multiple claims to attack his convictions and sentence: (1) alleged government misconduct; (2) bias on the part of the Court and Court error; (3) illegally obtained evidence; (4) an illegal arrest; (5) an illegal indictment; (6) other due process and constitutional violations; and (7) ineffective assistance of trial counsel. He insists, "I am actually innocent of the crimes and the sentence." *See* Section 2255 Motion ("Def. Mot.") [Dkt. 1142] at 3–4; Section 2255 Reply ("Reply") [Dkt. 1170] at 1. The Court will first address those claims that are procedurally barred, then the alleged ineffective assistance of trial counsel, and finally the remaining claims.

#### A. Claims That Are Barred

Mr. Simmons has already appealed his convictions and sentence, and none of his arguments was found to have merit. *See Wilson*, 605 F.3d at 1039 (affirming Mr. Simmon's convictions and sentence *in toto*). In part, the instant § 2255 motion argues matters that were

4

raised and rejected on direct appeal to the D.C. Circuit. "It is well established in the federal circuits that a federal prisoner cannot raise collaterally any issue litigated and adjudicated on a direct appeal from his conviction, absent an intervening change in the law." *United States v. Greene*, 834 F.2d 1067, 1070 (D.C. Cir. 1987) (quoting *Garris v. Lindsay*, 794 F.2d 722, 726–27 (D.C. Cir. 1986)); *see also Hardy v. United States*, 381 F.2d 941, 943 (D.C. Cir. 1967) ("It has been repeatedly held that issues disposed of on appeal from the original judgment of conviction will not be reviewed again under section 2255."). There has been no applicable change in the law. Thus, those arguments which were litigated unsuccessfully by Mr. Simmons before the D.C. Circuit are barred from further contention here.

This principle applies directly to Mr. Simmons's claims concerning MPD Officer Donna Leftridge. Officer Leftridge acted in an undercover capacity during the investigation of the M Street Crew. Her interactions with Messrs. Franklin, Simmons, Robinson, and Blackson, among others, were captured on video and audio. The Defendants' activities were fairly portrayed by video scenes and their voices. At the relevant time, Officer Leftridge was under investigation for an unrelated matter, of which the Court required notice to defense counsel without full details. *See Wilson*, 605 F.3d at 1003–08. Defendants also alleged that she and Jonathan Franklin began a personal relationship—off-camera and away from her undercover work—and that she borrowed money from Mr. Franklin. Both before the trial court and on appeal, Defendants contended that the government committed a *Brady*[2] violation by failing to

---

[2]  *Brady v. Maryland*, 373 U.S. 83 (1963), requires federal prosecutors to disclose to a criminal defendant all information that is or might be favorable and material either to guilt or punishment. Impeachment evidence must also be disclosed. There are three elements to a *Brady* claim, which implicates Due Process rights under the Fifth Amendment: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [government], either willfully or inadvertently; and prejudice must have ensued." *See Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

disclose the full scope of the unrelated investigation concerning Officer Leftridge and that the Court erred by not allowing cross-examination of Officer Leftridge about her alleged social contacts with Mr. Franklin.  These matters were fully argued on appeal and rejected.  *Wilson*, 605 F.3d at 1008, 1010–11.

The D.C. Circuit noted that Mr. Simmons and all of his co-defendants argued that their Sixth Amendment rights to confrontation[3] were violated at trial:

> (A) when the district court limited cross-examination of undercover police officer Donna Leftridge by failing to order the government to disclose during trial information it had failed to turn over as required by *Brady v. Maryland*, regarding an ongoing investigation of Officer Leftridge; and (B) when the district court prohibited all questioning regarding Officer Leftridge's alleged inappropriate social relationship with appellant John Franklin.

*Wilson*, 605 F.3d at 1003 (citation omitted).  The appellate court found no *Brady* violation when the trial court did not require disclosure of the subject-matter of the unrelated investigation of Officer Leftridge "because the undisclosed information would not have been admissible at trial." *Id.* at 1005; *see also id.* at 1006 (noting that "it is difficult to understand how the subject matter, rather than the fact of the existence of the investigation, would have assisted in portraying Leftridge as biased").  In fact, as the D.C. Circuit commented, Mr. Simmons's counsel cross-examined Officer Leftridge closely and "elicit[ed] her admission to the suspension [during the investigation] but also her denial of knowledge of the basis for the investigation." *Id.*  The trial

---

[3] The D.C. Circuit clarified that Defendants' challenge would be more accurately described as arising under their Fifth Amendment Due Process rights than under their Sixth Amendment Confrontation Clause rights.  *See Wilson*, 605 F.3d at 1004 ("In *United States v. Bagley*, 473 U.S. 667 (1985), the Supreme Court held that the withholding of potentially relevant impeachment evidence does not implicate the Confrontation Clause in the sense of 'any direct restriction on the scope of cross-examination.' *Id.* at 678.  Instead, 'the constitutional error, if any,' involves 'the Government's failure to assist the defense by disclosing information that might have been helpful in conducting the cross-examination.' *Id.*  This latter duty arises under the Due Process Clause of the Fifth Amendment.  *See id.* at 675; *see also Brady*, 373 U.S. at 86.").

ruling—that the risk of prejudice to Officer Leftridge substantially outweighed any probative value to defendants from knowing the basis for the unrelated investigation—was explicitly sustained. *Id.* ("That risk of prejudice would have substantially outweighed the minimal probative value of the evidence.").

In contrast, the Circuit found error because the government disclosed only that Officer Leftridge was suspended by Internal Affairs Division (IAD) and was under investigation, holding that the trial court should have required more complete disclosure for impeachment purposes. *Id.* at 1006–07. Nonetheless, the D.C. Circuit determined that the error was not "material" for *Brady* purposes because there was not "'a reasonable probability that the result of the trial would have been different if the suppressed [evidence] had been disclosed to the defense.'" *Id.* at 1007 (quoting *Strickler*, 527 U.S. at 289 (internal quotation marks omitted)). The law of the case is, therefore, that: (1) information about the subject-matter of the investigation concerning Officer Leftridge would have been inadmissible and was properly barred by the trial court because its undue prejudice to the witness outweighed any probative value; and (2) the prosecutor's error in not turning over full information and the Court's error in not requiring its production were harmless in the face of the overwhelming evidence of guilt, *i.e.*, there was no reasonable probability that such information would have affected the results for any of the Defendants, including Mr. Simmons. Because all claims relating to Officer Leftridge were fully argued and rejected on appeal, Mr. Simmons cannot rely on them here.

### B. Ineffective Assistance of Counsel

As he was charged, Mr. Simmons faced the death penalty if the Attorney General approved the prosecution as a capital case. The Court appointed Eduardo A. Balarezo as trial counsel and William Purpura as "learned counsel." *See* 18 U.S.C. § 3005 ("Whoever is indicted for . . . [a] capital crime shall" have appointed two counsel, "of whom at least 1 shall be learned

7

in the law applicable to capital cases."). After the Attorney General decided not to pursue the death penalty, the Court approved the continued appointment of both lawyers to represent Mr. Simmons at trial (at lower rates). Thus, his claim for ineffective assistance here relates to two lawyers.

The Supreme Court has articulated two separate standards for evaluating the effectiveness of trial counsel in a criminal case. Under *United States v. Cronic*, 466 U.S. 648 (1984), courts will presume a *per se* violation of the Sixth Amendment right to counsel only "'if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing.'" *Bell v. Cone*, 535 U.S. 685, 697 (2002) (quoting *Cronic*, 466 U.S. at 659) (emphasis in original). Mr. Simmons has made no showing in support of a claim under *Cronic*, which is inapplicable given the efforts Messrs. Balarezo and Purpura made in his defense.

Courts more commonly evaluate claims of ineffective assistance of counsel under the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires (1) a showing that counsel's representation fell below an objective standard of reasonableness; and (2) a showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008) (quoting *Strickland*, 466 U.S. at 687–88, 694) (quotation marks omitted). The burden of proof rests on a defendant to show that his lawyer made errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment and that counsel's deficient performance was prejudicial." *United States v. Geraldo*, 271 F.3d 1112, 1116 (D.C. Cir. 2001) (quoting *Strickland*, 466 U.S. at 687). In other words, to prevail on a claim of ineffective assistance of counsel, a defendant must prove both incompetence and prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). "Failure to make the required showing of

either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700.

A criminal defendant is guaranteed legal representation at trial and a defendant facing the death penalty is guaranteed a specially-knowledgeable "learned" counsel. Since it is so easy after the fact to blame the lawyer for the client's conviction, a high standard applies to demonstrate that the lawyer failed to represent his client effectively. A court's evaluation of an attorney's performance should be highly deferential, *i.e.*, there is a strong presumption that an attorney's conduct fell within the wide range of reasonable professional assistance. *United States v. Toms*, 396 F.3d 427, 432 (D.C. Cir. 2005) (quoting *Strickland*, 466 U.S. at 689). The fact that a particular litigation strategy failed does not mean that it had no chance of success or that counsel was ineffective by employing it. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.

In his pleadings here, Mr. Simmons claims ineffective assistance of counsel because: (1) neither counsel interviewed Ronnie Tucker or questioned him at trial, although Mr. Tucker identified Mr. Simmons as the masked man selling drugs on videotape to Officer Leftridge, Def. Mot. at 4; (2) neither counsel interviewed Jonathan Franklin or agreed to Mr. Simmons's insistence that they call him as a witness to testify to Officer Leftridge's activities, *id.* at 4; *see also* Reply at 8 ("[M]y lawyer then ignored my request to call mr franklin to the Stand as a witness and testify about donna leftridge borrowing a thousand dollars from him and pay It back a week later." (errors in original)); (3) neither counsel objected that no witness to the alleged sale to Officer Leftridge was presented at Mr. Simmons's initial appearance, preliminary

9

hearings, or suppression hearing and no witness statements were produced before trial showing that Mr. Simmons was the masked man shown on videotape selling drugs to Officer Leftridge, in violation of his constitutional rights, Def. Mot. at 5, Reply at 2, 4 ("Defense Counsel Ineffective at Discovery. . . . Notes and Transcripts never given to William Simmons until he was given them to do his 2255."); and (4) neither counsel argued to the jury, at Mr. Simmons's specific request, that the racketeering acts had to "span over a time period of a year and three months." Reply at 6. These arguments misperceive the legal standards governing trial and a claim of ineffective assistance.

"[T]o show prejudice, a defendant basing an inadequate assistance claim on his or her counsel's failure to investigate must make 'a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming its admissibility in court, would have produced a different result.'" *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (quoting *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987)). Mr. Simmons gives no hint at what evidence might have been obtained from Messrs. Tucker or Franklin or Officer Leftridge that would have demonstrated that he was not the person wearing a mask who delivered drugs to the officer, as shown on videotape.[4] As discussed above, the alleged wrongs of Officer Leftridge are no longer open to discussion or debate. In what ways her testimony might have been attacked through information from Mr. Tucker *or* Mr. Franklin is now legally irrelevant. Thus, Mr. Simmons cannot successfully contend ineffective assistance of counsel in relation to Officer Leftridge.

---

[4] More to the point, that one narcotics sale was not the only count on which Mr. Simmons was convicted, and its elimination would not eliminate the narcotics and RICO conspiracy counts that contributed so heavily to his sentence.

The degree and extent of cross examination is peculiarly a matter of trial strategy by defense counsel. *See, e.g.*, *United States v. Clayborne*, 509 F.2d 473, 479 (D.C. Cir. 1974) ("The decision whether to cross-examine a witness is peculiarly one for defense counsel and his judgment should be entitled to great respect by the court."); *see also United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) (holding that "the conduct of examination and cross-examination is entrusted to the judgment of the lawyer"). In this case, counsel for Mr. Simmons had a specific strategy that became evident by the end of trial. Mr. Simmons's lawyers questioned select prosecution witnesses and never argued that Mr. Simmons did not use drugs; to the contrary, they elicited evidence that he was an addict. The defense strategy was to portray Mr. Simmons as a degenerate drug addict, living in a ruined car under a blue tarp near his mother's house, and barred from the house—in which his mother kept the refrigerator locked to prevent his theft of food to sell for drugs. The defense theory (perhaps uncomfortable to Mr. Simmons, but partially successful) was that he was too far gone into addiction for anyone to trust him with drugs, so that he played the role only of Jonathan Franklin's "flunky" and should not be accorded responsibility for the activities of the M Street Crew. This defense strategy contributed to Mr. Simmons's acquittal of the murder of Kevin Lurk, the shooting of Shelby Anderson, and the use of guns in those crimes—as well as the jury's conclusion that the RICO conspiracy did not involve murder. It also affected his sentence after conviction. Much as he might attack their representation after the fact, Mr. Simmons avoided a life sentence due to his attorneys' efforts.

For these reasons, the Court finds that Mr. Simmons's claim of ineffective assistance of trial counsel fails as a matter of law and fact. Because this Court presided over all pre-trial, trial, and post-trial proceedings against Mr. Simmons and is totally familiar with his case, it finds that his claim of ineffective assistance of counsel can be resolved on the basis of the

existing record without a hearing. *See, e.g., Weaver*, 234 F.3d at 46 (affirming summary denial of 2255 motion where record conclusively showed that the defendant "failed to meet his burden of showing prejudice under *Strickland*").

### C. Miscellaneous Claims

Other than ineffective assistance of counsel, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see also United States v. Mathis*, 503 F.3d 150, 153 (D.C. Cir. 2007). Cause means "that [the defendant] was impeded by some objective factor external to the defense, such as governmental interference or the reasonable unavailability of the factual basis for the claim." *McCleskey v. Zant*, 499 U.S. 467, 468 (1991). If a court concludes that a defendant suffered no prejudice, it need not consider whether cause has been shown; conversely, if a defendant fails to show cause, the court need not reach the issue of prejudice. *United States v. Frady*, 456 U.S. 152, 168 (1982).

Mr. Simmons argued long and hard about the issues surrounding Officer Leftridge on direct appeal but did not raise any of his other current contentions of government misconduct, court error, or violations of his constitutional rights. He presents no reasons for his previous silence on these points that could excuse it. Mr. Simmons does not argue that he was unaware of these matters and has been reasonably diligent. He does not identify any barrier that prevented him from raising them earlier to his counsel or the court on appeal. Absent cause for neglecting to raise his claims regarding alleged court error, government misconduct, and due process and other constitutional violations, those claims are all barred. *See Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) (surveying procedural default law in context of petitions under 28 U.S.C. § 2254 and concluding that abandonment by an attorney constitutes "cause"); *Bousley v. United States*, 523 U.S. 614, 622 (1998).

The Court does not overlook Mr. Simmons's statements that he is actually innocent. A court may, indeed, consider a motion that is procedurally barred if the defendant can establish that a constitutional error "has probably resulted in the conviction of one who is actually innocent." *Bousley*, 523 U.S. at 623; *United States v. Stewart*, 246 F.3d 728, 729 (D.C. Cir. 2001). But except for his mere statements, Mr. Simmons offers nothing to support his alleged innocence, and he fails completely to address any fact underlying his conviction other than the one sale to Officer Leftridge. *Bousley*, 523 U.S. at 623, (holding that, to sustain an actual innocence claim, a "petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995))).

Were the Court to consider Mr. Simmons's remaining claims on the merits, it would still dismiss them. Mr. Simmons charges the government with misconduct because: (i) he did not receive any notes or statements that proved he was the one wearing a mask and delivering drugs to Officer Leftridge or identified eye witnesses to that transaction who were not law enforcement; and (ii) the government relied on perjured testimony from FBI Special Agent Stallings during his grand jury testimony. But Mr. Simmons offers no basis to conclude that there *were* notes or statements or non-law enforcement witnesses, and he ignores the Circuit's detailed consideration of all of the issues surrounding Officer Leftridge. *See Wilson*, 605 F.3d at 1003–08. His attack on Special Agent Stallings is a mere *ipse dixit*. The contention that the Court was biased against him is also presented without any underlying facts. And, while most, but not all, of his motions and objections were overruled, "judicial rulings alone almost never constitute valid basis for a bias or partiality recusal motion." *Liteky v. United States*, 501 U.S. 540, 555 (1994) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)); *see also*

*Klayman v. Judicial Watch, Inc.*, 744 F. Supp. 2d 264, 270 (D.D.C. 2010) ("Importantly, to be disqualifying, the alleged bias usually must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." (internal quotation marks and citations omitted)).  In fact, Mr. Simmons's counsel were quite persuasive at sentencing.

Ms. Simmons is a most sincere litigant, but he misperceives the law when he argues that a search warrant can only be based on live sworn testimony.  Federal Rule of Criminal Procedure 41(d) provides that a search warrant may be granted on the basis of a sworn affidavit,[5] and the affidavit may reflect the product of an investigation by more than only the swearing officer.  *See United States v. Ventresca*, 380 U.S. 102, 108 (1965).  The search warrant here was based on a 78-page affidavit which set forth probable cause, as found both by the judge who authorized the search and by the undersigned when it was challenged later.  Similarly, Mr. Simmons's time to challenge the facts alleged in the indictment was at trial, not after sentencing.  *See United States v. Calandra*, 414 U.S. 338, 345 (1974) ("[A]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence . . . .").  Finally, the Controlled Substances Act, 21 U.S.C. § 811 *et seq.*, and RICO, 18 U.S.C. §§ 1961-68, are valid exercises of congressional power and fully provide jurisdiction to the Court over Mr. Simmons's prosecution.  The Court's jurisdiction over these federal crimes, committed in the District of Columbia, is not subject to attack.  18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.").

---

[5] "When a federal law enforcement officer or an attorney for the government presents an affidavit in support of a warrant, the judge *may* require the affiant to appear personally and may examine under oath the affiant and any witness the affiant produces." Fed. R. Crim. P. 41(d)(2)(A) (emphasis added).

## IV.  CONCLUSION

The arguments presented by William H. ("Mike") Simmons in his motion under 18 U.S.C. § 2255, Dkt. 1142, are without merit, as explained above.  The motion to vacate, set aside, or correct his sentence will be denied.

DATE: June 28, 2013

/s/
ROSEMARY M. COLLYER
United States District Judge
